UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 13-134(DSD/TNL)

United States of America,

       Plaintiff,

v.  **ORDER**

David Larry Rasmussen,

       Defendant.

This matter is before the court upon the objection by defendant David Larry Rasmussen to the October 9, 2013, report and recommendation of United States Magistrate Judge Tony N. Leung. Based on a review of the file, record and proceedings herein, and for the following reasons, the court overrules the objection.

**BACKGROUND**

The background of this matter is fully set forth in the report and recommendation, and the court summarizes only those facts necessary to resolve the current objection. On October 27, 2012, Mountain Lake Police Officer Brian Lunz responded to a dispatch directing him to an address in Mountain Lake, Minnesota. Mot. Hr'g at 16:38.[1] The dispatcher informed Officer Lunz that Charles Beckman had requested to speak with a police officer at the address

---

[1] Rasmussen did not provide the court with a transcript of the motion hearing. In conducting its de novo review, the court has reviewed the audio recording of the August 21, 2013, motion hearing.

about some photographs. Id. at 26:22-27:10. Officer Lunz testified that the dispatcher did not provide him with further information about the nature of the photographs. Id. In the driveway of the address, Officer Lunz encountered Beckman, who informed him that a cellular phone belonging to Rasmussen contained images of child pornography as he displayed one such image on the device. Id. at 17:28, 17:59-19:49, 20:20-32. Mountain Lake Police Officer Joseph Larson arrived on the scene to assist Officer Lunz. Id. at 23:38-49, 37:02-52. Officer Lunz seized the phone, conferred with his supervisor and prepared a search warrant application for the address and the phone itself. Id. at 22:40, 23:06-24:30.

Rasmussen returned to the address just before officers executed the search warrant. Id. at 38:30. Officer Larson asked Rasmussen if he would agree to speak with police. Rasmussen agreed and drove himself to the Mountain Lake Police Department. Shortly after midnight on October 28, 2012, Officer Larson interviewed Rasmussen at the Mountain Lake Police Department. Id. at 40:04-14. That initial interview was conducted in an unlocked room. Id. at 40:40-42:50. Officer Larson read Rasmussen his Miranda rights, and Rasmussen signed a form acknowledging that he understood and waived his rights. Id. at 43:39.

On October 29, 2012, Officer Larson again interviewed Rasmussen, who had been arrested following the execution of the

2

search warrant. Id. at 50:12-20, 50:31. Again, Officer Larson advised Rasmussen of his Miranda rights, and Rasmussen signed a new form acknowledging and waiving his rights. Id. at 51:48-52:04. During questioning, Rasmussen was not handcuffed or physically restrained. Officer Larson was armed during the interviews, but did not unholster his weapon at any time. Id. at 45:32-38, 51:20-27, 54:53.

On October 9, 2013, the magistrate judge recommended that the court deny Rasmussen's motions to suppress (1) statements made during the two interviews and (2) the contents of the seized phone, as well as all physical evidence collected as a result of the seizure. Rasmussen objects.

## DISCUSSION

The court reviews the report and recommendation of the magistrate judge de novo. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b); D. Minn. LR 72.2(b).

**I. Statements to Officers**

Rasmussen first moves to suppress statements he made to Officer Larson, arguing that they were not made voluntarily. The government responds that statements made by Rasmussen during the interview were made freely and voluntarily.

As a preliminary matter, there is no dispute that Rasmussen was in custody at the time the statements were made, and that he

3

was therefore entitled to a reading of his Miranda rights. Rasmussen argues that (1) his waiver of his Miranda rights was not voluntary and (2) the statements he gave after the waiver were not voluntary.

The inquiries into the voluntariness of a Miranda waiver and of subsequent statements to police are identical. See, e.g., Colorado v. Spring, 479 U.S. 564, 573-74 (1987). A waiver or statement "is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." United States v. Vega, 676 F.3d 708, 718 (8th Cir. 2012) (citation and internal quotation marks omitted). The court "consider[s], among other things, the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." Id. (alteration in original) (citation and internal quotation marks omitted).

Here, the court finds that the tactics used by Officer Larson during his interviews of Rasmussen were not improperly coercive. Officer Larson twice informed Rasmussen of his Miranda rights and Rasmussen acknowledged and waived those rights. See Mot. Hr'g at 43:39, 51:48-52:04. Further, Rasmussen has adduced no evidence that Officer Larson spoke or acted in a threatening or intimidating manner during either interview. Rasmussen never exhibited signs of

extreme stress, intoxication or a medical issue that would have rendered his statements to Officer Larson involuntary. Id. at 46:03-52, 53:26-41, 54:18. Moreover, there is no evidence that lack of maturity, lack of education or a compromised condition compelled Rasmussen to answer the officers' questions. In sum, the circumstances of the interviews, including their tone, settings and the demeanor of the participants do not warrant a finding of coercion. See, e.g., United States v. Galceran, 301 F.3d 927, 930-31 (8th Cir. 2002) (per curiam) (finding ninety-eight minute interview in windowless conference room by two armed officers not coercive). The court finds that the Miranda waivers and the statements made by Rasmussen during the October 28 and October 29, 2012, interviews were voluntary. As a result, the magistrate judge correctly found that suppression of the statements is not warranted and this portion of the objection is overruled.

**II. Seizure of Phone**

Rasmussen next argues that the contents of his phone and other physical evidence should be excluded as fruit of the poisonous tree because Officer Lunz unlawfully seized the phone. See United States v. Villa-Gonzalez, 623 F.3d 526, 534 (8th Cir. 2010) ("The exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure ... but also evidence

5

later discovered and found to be derivative of an illegality or fruit of the poisonous tree." (alteration in original) (citation and internal quotation marks omitted)).

As an initial matter, Rasmussen urges the court to conclude that the testimony provided by Officer Lunz is unreliable due to several inconsistencies between his testimony and his initial report. Specifically, Rasmussen argues that these inconsistencies relate to the time of day at which Officer Lunz first made contact with Beckman and the manner in which Officer Lunz communicated with his supervisor about how to proceed given his discovery of child pornography. The court agrees with the magistrate judge that any such inconsistencies do not substantially impact the analysis of Rasmussen's objection.

Rasmussen next argues that Beckman did not have authority to consent to the seizure of the phone and, as a result, the seizure violated his Fourth Amendment rights. The Fourth Amendment, however, does not apply to a seizure "effected by a private party on his own initiative." United States v. Wiest, 596 F.3d 906, 910 (8th Cir. 2010) (citation and internal quotation marks omitted). In determining whether a seizure is truly effected by a private party, the court considers "whether the government had knowledge of and acquiesced to the intrusive conduct; whether the citizen intended to assist law enforcement or instead acted to further his own purposes; and whether the citizen acted at the government's

request." United States v. Smith, 383 F.3d 700, 705 (8th Cir. 2004) (citation and internal quotation marks omitted). Rasmussen has adduced no evidence that Beckman acted in any way other than as a private party. Here, Beckman acted independently and as a concerned citizen, not at the request of law enforcement officers.

Rasmussen also argues that seizure of the phone was improper because Officer Lunz did not have a warrant. Under the plain view doctrine, however, officers may "seize an object without a warrant if they are lawfully in a position from which they view the object, the incriminating character of the object is immediately apparent, and the officers have a lawful right of access to the object." United States v. Muhammad, 604 F.3d 1022, 1027 (8th Cir. 2010) (citations omitted). For the plain view exception to apply, discovery of the evidence must be inadvertent. United States v. Raines, 243 F.3d 419, 422 (8th Cir. 2001). Here, Officer Lunz was not aware, prior to making contact with Beckman, that the situation for which he was dispatched related to child pornography. Mot. Hr'g at 26:22-27:10. Beckman displayed an image of a naked prepubescent female — immediately identifiable by Officer Lunz as child pornography — as he explained Rasmussen's ownership of the phone. Id. at 21:36-56. The discovery of child pornography by Officer Lunz was unsolicited and inadvertent, and its incriminating character was immediately clear given Officer Lunz's experience and training. See Muhammad, 604 F.3d at 1027 (noting that in order to

be "immediately apparent" in the Fourth Amendment context, an officer performing a search need only probable cause to believe that an item is incriminating).

The court finds that seizure of the phone was proper. As a result, suppression of the phone is not warranted and the court declines to suppress the contents of the phone or other physical evidence collected as a result of the seizure. Therefore, this portion of the objection is overruled.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's objection to the report and recommendation [ECF No. 52] is overruled;

2. The motion to suppress evidence obtained as a result of search and seizure [ECF No. 52] is denied;

3. The motion to suppress statements, admissions and answers [ECF No. 52] is denied; and

4. The report and recommendation [ECF No. 51] is adopted in its entirety.

Dated: December 6, 2013

                                              s/David S. Doty
                                              David S. Doty, Judge
                                              United States District Court